(No. 89-CC-0637—▮▮▮▮▮

JAMES E. WILLIAMS, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed May 29, 1991.*

JAMES E. WILLIAMS, *pro se*, for Claimant.

ROLAND W. BURRIS, Attorney General (LANCE T. JONES, Assistant Attorney General, of counsel), for Respondent.

## OPINION

PATCHETT, J.

This is a claim by an inmate of the Illinois Department of Corrections seeking judgment against the State for the sum of $250.00 based on allegations that there was an unauthorized withdrawal from his trust fund of that amount between July 11, 1987, and July 14, 1987.

The Claimant did establish that he had certain funds in his trust account at the time in question. A copy of the Claimant's trust fund record was attached to the complaint covering the time period of July 10, 1987, through August 5, 1987. This included a disbursement to Ms. Gail Bender on July 14, 1987.

The parties in this case stipulated that the Claimant had indeed received a lump sum deposit of $5,000.00 to his trust account, and that the disbursement in question came from that deposit. It was undisputed that the Claimant's trust fund was administered and managed by agents of Respondent.

When they administer and manage trust funds of inmates, the Illinois Department of Corrections disburses funds pursuant to a formal written request referred to as a "P—96." Attached to the complaint was a copy of a P—96 which purported to bear his signature and the signature of a correctional officer, Louis Richardson. The Claimant contends that this P—96 form which caused the $250.00 at issue to be withdrawn did not bear his signature. He further contends that he first became aware of the problem when he was contacted by an agent of the Respondent from the Internal Affairs Department of Pontiac Correctional Center.

Apparently the Claimant had been contacted by agents of the Respondent in connection with three disbursement requests that were successfully stopped by Respondent's agents. Claimant testified that he then checked his trust funds disbursements sheet, and he recognized for the first time that there had been another unauthorized withdrawal which had cleared. This was the $250.00 withdrawal in question. The Claimant then requested a copy of the receipt from the Trust Fund Office around July 25, 1987.

Cathy Verdun, the trust officer of Pontiac Correctional Center at the time, was called as a witness by the Respondent. She testified that if her office receives a P—96 form in the institutional mail, the office checks to see if the inmate has sufficient funds in his trust account to allow the withdrawal. Once the withdrawal is made, the account is debited, and the inmate is sent a receipt consisting of one of three copies of the P—96 form.

In the event that the trust fund office was furnished with a bogus P—96, and a disbursement was made on that basis, the inmate would know about the transaction by receiving a copy of the P—96 in the mail. Cathy Verdun testified that the residents receive a copy of the transaction that same day. She further testified that the checks are held by the trust fund office for the period of a day and a half so the inmate would have time to alert the Trust Fund Office to a fraudulent P—96. Verdun testified that if the Claimant had placed a stop order on any of his trust fund transactions, this would have been reflected on the trust funds sheet for the Claimant. A copy of the trust fund sheet was admitted into evidence as exhibit A of the Respondent. That exhibit indicated that there were no stop orders by the Claimant.

Verdun testified that the Claimant had indeed written her a letter on August 4, 1987, requesting a copy of the P—96 form in question. That letter had simply requested a copy "of the return receipt for this deduction." Although it is true that the Claimant did not indicate to the trust fund office in the letter that there was a possibility of a forgery or anything amiss, evidently the Claimant had already been contacted by the agents of the Internal Affairs Department of the Respondent.

Verdun went on to testify as to the procedures involving the trust fund office, indicating in part that the

copies of P—96 forms are always sent to the inmates. However, there was no testimony as to the specific P—96 form in question, or whether a copy of that P—96 form was furnished to the Claimant in a timely manner.

On cross-examination, the Claimant testified that he first became aware of the $250.00 deduction in question on July 20, 1987, while being interviewed by the internal affairs officer. The Claimant testified he had no idea that he could request a stop order at that point.

The Claimant's testimony that an unauthorized withdrawal in the amount of $250.00 was made from his trust account on the basis of a forged P—96 form is not disputed. The Respondent indicates that the Claimant knew about the unauthorized withdrawal six days after the Claimant's account had been restricted. The Claimant denies having received a copy of the P—96 form, but admits he was interviewed by an internal affairs officer on July 20, 1987. The Respondent has previously indicated that Claimant did not communicate directly with the trust fund office until August 4, 1987. At that time there was no complaint of an unauthorized or fraudulent withdrawal, but a request for receipt, which the trust fund office indicated would have been previously forwarded to him.

The Commissioner of this Court held a hearing in this case and indicated that he did not believe the Claimant when he testified that he was unaware on July 20, 1987, that he could have requested the stop payment on the P—96 form in question. In fact, the unauthorized check in question was not cashed until July 23, 1987. If the Claimant had alerted the trust fund office on July 20, 1987, of the unauthorized or fraudulent form P—96, this loss could have been prevented. The Claimant's own testimony established that the trust fund office responds to inmates' inquiries promptly.

323

This is a difficult case. It is undisputed that the Respondent had control of the trust fund account. The Claimant could control his account to the extent that he could have alerted the Respondent's agents in a timely fashion of the attempted unauthorized withdrawal. However, the evidence is undisputed that there were in fact attempts to withdraw money from his trust fund account.

While the Claimant's failure to ask for a stop payment order resulted in a check being cashed three days after the Claimant was first alerted to the problem, it is also not in dispute that the $250.00 check was not authorized. Results of the internal affairs investigation as to the cause, and person responsible for the attempted unauthorized withdrawals were inconclusive.

However, since the Claimant was notified of the attempted fraudulent transfer in time for an objection by him to stop payment of the check in question, we deny this claim.